UNITED STATES *v.* KELLOGG CO.

**No. 7456.**—Invoice dated Toronto, Canada, November 20, 1945.
Entered at Omaha, Nebr., December 11, 1945.
Entry No. 84–A.

(Decided December 2, 1947)

*Paul P. Rao,* Assistant Attorney General (*Howard L. Harawitz* and *Richard H. Welsh,* special attorneys), for the plaintiff.
No appearance by the defendant.

CLINE, Judge: This is a collector's appeal for reappraisement of ground refuse screenings exported from Canada on November 26, 1945.

The merchandise was sold pursuant to a contract dated September 10, 1945, for the price of $20 per ton, freight and duty included. It was entered and appraised at the invoice price, less freight, duty, and brokerage fees, or a net value of $12.30 per ton, packed.

The case was originally heard and submitted before Judge Mollison on November 26, 1946. There was no appearance on the part of the defendant. Judge Mollison concluded that there was no export value and no foreign value and restored the case to the calendar for the production of proof of the elements of any other basis of value. *United States* v. *Kellogg Co.,* 18 Cust. Ct. 598, Reap. Dec. 7251.

When the case came before me on rehearing, there was again no appearance on the part of the defendant and counsel for the Government stated:

The defendant, Kellogg Company, has never appeared, and even before I left New York they sent us a letter that they didn't intend to appear even at the call of this docket.

However, I consulted with the appraiser and the collector and the supervising customs agent, and they advise me that there is no hope of securing any further evidence in that case. Therefore, they desire it to be resubmitted on the record as has been made. It was just restored to the calendar to give the Government an opportunity to produce further evidence, and we have not, and just resubmit.

The Government has conceded that there is no foreign value, since sales for home consumption were prohibited by the Canadian Government. However, it is claimed that the sum of $30.86 per ton represents the proper dutiable export value of the merchandise.

According to a report of Treasury Representative F. H. Bunting, dated May 17, 1946 (plaintiff's exhibit 1), the shipment herein represented the only sale by the exporter to the United States during the period September 10 to November 26, 1945, and the price was arrived at by bargaining. However, similar merchandise was offered by James Richardson & Sons, Ltd., and Sullivan and Kennedy Ltd. Price lists of the former are attached to plaintiff's exhibit 1 and price lists

of the latter were received in evidence as plaintiff's exhibit 3. It appears therefrom that screenings were being offered for sale to various cities in the United States at different prices. It further appears 'from the testimony of Brice A. Lane, examiner of merchandise, that these prices included freight to the point of destination, consular invoice, brokerage charges, and duty. Mr. Lane testified that on the price list of November 26, 1945 of Sullivan & Kennedy Ltd., the gross price for Buffalo was $38.30 a ton; that that included freight in the sum of $5.64, brokerage and consular fees of $0.25, and duty in the amount of $1.55, making the net price $30.86 per ton. He added that the gross price for Chicago on the same date was $34.10 per ton and the net price was $25.57 a ton.

It thus appears that the variation in the prices for the different cities was not due entirely to a difference in freight charges and that there was no single uniform price at which all purchasers might buy this merchandise.

On this state of the record Judge Mollison held that there was no export value, stating:

In this case, the offerer would have obtained a varying net return had sales resulted from his offers for shipment to different American cities or groups of cities. Since the grain market is well known to be a highly organized and competitive one, it is quite logical that the differences in the returns upon shipment to various cities or groups of cities, aside from freight costs, were attributable to competitive conditions in the cities or areas named. However, none of the prices at which the merchandise was offered was a *freely* offered price, for each was qualified and restricted by requiring shipment to a designated city or area in the United States in order to obtain the price quoted. Likewise, this manner of offering the goods negatives the existence of a true export value since the statute contemplates a situation in which it is possible to arrive at a figure representing "the price at which they could be bought at the principal market, less the expense of moving them out of the country." (*United States* v. *Heffernan Paper Co.*, 13 Ct. Cust. Appls. 593, T. D. 41454.) Deduction of the expenses of moving screenings such as or similar to those at bar out of the country of exportation would result in a series of unrelated prices, none of which represents statutory export value.

No further evidence has been offered to prove dutiable value. Since the appraisal herein was based on export value and since the evidence indicates that no export value exists, there is no longer a presumption of correctness attaching to the appraiser's action. However, the plaintiff in reappraisement cases has the burden not only of overcoming that presumption, but of proving the correct dutiable values. *Harry Garbey* v. *United States*, 24 C. C. P. A. 48, T. D. 48332; *Sears Roebuck & Co.* v. *United States*, 31 C. C. P. A. 36, C. A. D. 246. In the instant case the plaintiff has failed to prove the correct dutiable value.

Section 501 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (section 16 (b)), provides that the trial judge shall in every case "determine the value of the merchandise

from the evidence in the entry record and that adduced at the hearing." In *United States* v. *Joseph Fischer as Liquidating Agent of Schmoll Fils Assd., Inc., et al.*, 32 C. C. P. A. 62, C. A. D. 286, it was held that it was the duty of the trial court to determine value although no evidence was adduced at the trial.

I am constrained to hold, therefore, that the proper dutiable value for the involved merchandise is the entered and appraised value. Judgment will be rendered accordingly.